# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-

MACLEN DOMINGUEZ, a Colorado resident

    Plaintiff,

v.

JF Freight Company, Roadrunner Express, Inc., Illinois residents, and
Oscar Gordon, a Wisconsin resident

    Defendants.

_____

## COMPLAINT
_____

The plaintiff, through counsel, pursuant to Fed.R.Civ.P. 8, for a Complaint, asserts and alleges as follows:

### I.   Venue and Jurisdiction

1. The plaintiff is a Colorado resident residing at 1955 Sickle Street, Monte Vista, Colorado, in Rio Grande County, Colorado.

2. Defendants JF Freight and Roadrunner Express are Illinois residents, with their principal places of business domiciled within the State of Illinois.

3. Defendant Gordon, based on information and belief, is a resident of the State of Wisconsin.

4. The amount in controversy exclusive of costs and interest exceeds $75,000.

5. This court has subject matter jurisdiction over the parties and matter in controversy because of the amount in controversy complete diversity between

the litigants exists where both are citizens of separate states qualifies to invoke jurisdiction of this court pursuant to 28 U.S.C. 1332 (a) (1).

## II.   General Allegations

6. Defendant JF Freight Company (hereinafter JF Freight) and Roadrunner Express, Inc., (hereinafter Roadrunner) are foreign corporations in good standing domiciled within the State of Illinois.

7. JF Freight and Roadrunner are businesses licensed to transact lawful business within the States of Colorado and Illinois.

8. JF Freight and Roadrunner either own, operate and/or lease tractors and trailers for use in transporting cargo, including potatoes harvested in Colorado.

9. JF Freight and Roadrunner have a lease agreement in full force in effect as of Feb. 4, 2013, *see,* **exhibit 1,** in which the two companies characterize Roadrunner as an Independent Operator and JF Freight as the Corporation.

10. The terms and conditions of that Lease Agreement provide the two companies will work jointly in transporting cargo loads hauled by semi-tractors in trailers furnished by Roadrunner operated by Roadrunner drivers.

11. The lease agreement provides that both companies will share responsibility for providing safe drivers and safe equipment and that Roadrunner "shall ensure that its Drivers follow the {JF Freight} Operating Procedures while operating the Semi-trucks, and shall at all times act in manner which will maintain or improve safety, reputation and good-will developed by {JF Freight}."

12. JF Freight and Roadrunner are jointly responsible to provide safe equipment and safe operators for use and operation in the transport of potatoes harvested in Colorado.

13. Drivers of JF Freight-Roadrunner semi-trucks do so within the course and scope of their agency with Roadrunner and/or JF Freight.

14. JF Freight and Roadrunner are responsible to comply with Federal Motor Carrier Safety Regulations, including title 49 CFR and subparts 392, 393 and 396.

15. On or about Feb. 4, 2013, a JF Freight/Roadrunner semi-truck operated by an employee and/or agent of JF Freight or Roadrunner, believed to be defendant Oscar Gordon, drove his overweight semi-truck to a freight yard in which plaintiff Maclen Dominguez was working for Summit Farms to load potatoes onto other rigs.

16. Gordon, while acting within the course and scope of his agency and/or employment with JF Freight/Roadrunner had chosen to drive his overweight semi-truck an estimated 15 miles with his trailer brakes locked, according to Pinnacol Assurance investigator John Hindes.

17. After his rig was weighed at a scale, Gordon determined his cargo exceeded safe weight allowances so decided to drive back to the loading location to lighten his load to safer weight levels.

18. When he arrived at the loading station, Gordon had smoke spewing from beneath his rig, which Hindes attributed to Gordon driving the 15 miles with his trailer brakes locked, *see,* **exhibit 2**.

19. Instead of waiting permission for where to park his rig, Gordon chose to steer his JF Freight/Roadrunner rig next to where workers such as Maclen Dominguez were working in the cargo area.

20. Gordon's rig, as he came to a stop, still had smoke and fumes emanating from beneath the rig near the wheels.

21. Dominguez and others next to the rig alerted to the smoke and fumes looked beneath the rig to determine what caused the fire, smoke or fumes spewing onto them to occur in order to protect others from potential injury.

22. At that juncture, something within the rig – identified either as an airline under pressure or an airbag – burst, showering Dominguez with shrapnel, blinding him and puncturing an eardrum. He further suffered facial burns and disfigurement from shards of metal permanently implanting themselves into his face as if he had been tattooed.

## Claim for Relief
## (Negligence)

23. At all times relevant here, driver Gordon was acting within the course and scope of his agency and/or employment with JF Freight or Roadrunner.

24. At that time and location, defendants JF Freight and Roadrunner owed a duty of due care to Maclen Dominguez, and others at the cargo loading area, to operate safe equipment operated safely by a safe driver.

25. The decisions to operate an overweight JF Freight/Roadrunner semi-truck with locked tractor brakes or operate equipment not maintained so that brakes would overheat or parts would explode were careless, negligent, and not what reasonably prudent truckers or trucking concerns would do.

26. The defendants owed duties of due care to properly operate, maintain, repair and control its equipment in a safe condition so anyone adjacent to one of their semi-trucks would not sustain injury, harm or loss by failure of the defendants' equipment.

27. The defendants breached those duties of due care as summarized, causing Maclen Dominguez to suffer economic losses for past and future medical expenses, loss of income, along with non-economic losses for physical impairment, pain, discomfort, disfigurement, facial burns, vision loss, hearing loss, require a corneal transplant, sensitivity to light, tattooing of his face from metal exploding into his face, constant ringing in his ears from a condition called tinnitis, needless physical and mental suffering, emotional distress, impairment in the quality of his ability to enjoy life through normal use of his senses and without needless pain, and other non-economic damages in amounts within the subject matter jurisdiction of this court.

**WHEREFORE,** the plaintiff prays for judgment on his behalf for his economic and non-economic losses, damages, injuries, and harm, for costs, interest provided by C.R.S. §13-21-101, et.seq., for expert witness fees, and any other relief authorized by law.

Respectfully submitted this 25th day of January 2016,

THE KAUDY LAW FIRM, LLC

*A duly signed original is on file at*
The Kaudy Law Firm, LLC

*/s/ Richard M. Kaudy*
Richard M. Kaudy, #12345
Cajardo R. Lindsey, #33672
THE KAUDY LAW FIRM, LLC
333 W. Hampden Avenue, Suite 850
Englewood, CO 80110
Phone: (303) 623-1885
Fax: (303) 623-1825
Email: rkaudy@kaudylaw.com
clindsey@kaudylaw.com
